**YELLOW BIRD**

v.

**OGLALA SIOUX TRIBE OF SOUTH DAKOTA et al.**

**POURIER v. OGLALA SIOUX TRIBE OF SOUTH DAKOTA et al.**

No. Civ. 74–5009.

United States District Court,
D. South Dakota.

Aug. 8, 1974.

William A. Wymann, Rapid City, S. D., Mario Gonzalez, Batesland, S. D., for plaintiffs.

Dennis H. Hill, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge:

The plaintiffs in the above-entitled action, Harry Yellow Bird and Morton Pourier, have brought this action seeking to declare invalid and enjoin a portion of Article II of the Constitution of the Oglala Sioux Tribe as applied to plaintiffs, and Oglala Sioux Tribal Ordinance 85G.

In the complaint, the plaintiffs make the following factual allegations which are not controverted by the defendants: That pursuant to the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 461 et seq., the Oglala Sioux Tribe enacted a constitution and bylaws which were approved by the Department of Interior on December 11, 1935.

That Article II of the Oglala Sioux Tribal Constitution reads as follows:

### ARTICLE II—MEMBERSHIP

*Section I.* The membership of the Oglala Sioux Tribe shall consist as follows:

a. All persons whose names appear on the official census roll of the Oglala Sioux Tribe of the Pine Ridge Reservation as of April 1, 1935, provided, that correction may be made in the said roll within five years from the adoption and approval of this constitution by the Tribal Council, subject to the approval of the Secretary of Interior.

b. All children born to any member of the tribe who is a resident of the reservation at the time of the birth of said children.

*Section II.* The Tribal Council shall propose bylaws covering future membership and the adoption of new members.

Both of the plaintiffs, in their complaint, allege that they sought to run in the Oglala Sioux primary election that was held on January 22, 1974, and that they followed the qualification procedures set forth in the Oglala Sioux Election Ordinance No. 85G, by submitting qualifying petitions with at least the minimum required number of names prior to the deadline for submission of such petitions. That both of the plaintiffs were disqualified from having their names placed on the primary election ballot, and also on the general election ballot, by the Oglala Sioux Tribal election board.

Both of the plaintiffs in this complaint contend that they should be treated as enrolled members of the Oglala Sioux Tribe under the provisions of Article II, section 1, of the Oglala Sioux Tribal Constitution, or under the provisions of the Oglala Sioux Tribal Council resolution 64–43. It does not appear from the complaint, however, that either of the plaintiffs have petitioned the Tribal Council for a determination of their tribal membership status.

The plaintiffs further contend that their classification as non-enrolled members in the Oglala Sioux Tribe, which status does not allow them to run for tribal office, is arbitrary and capricious and has no reasonable relationship to any legitimate purpose of the Oglala Sioux Tribe. The plaintiffs therefore pray that this Court assume jurisdiction of this case under 28 U.S.C. § 1343(4), issue a declaratory judgment finding that Article II of the Oglala Sioux Tribal Constitution and Oglala Sioux Election Ordinance 85G are on their face in violation of plaintiffs' civil rights under 25 U.S.C. § 1302, and invalidate the primary election that was held for the Pine Ridge and Wakpamni communities on January 22, 1974 for the position of councilman.

Before any determination can be made of the plaintiffs' claim, this Court must decide whether or not it has jurisdiction. The plaintiffs in their complaint contend that the District Court has jurisdiction to determine their claims under 28 U.S. C. § 1343(4) and 28 U.S.C. § 1331(a). However, before the plaintiffs may take advantage of either jurisdictional statute, it must be determined whether the equal protection clause in the Indian Civil Rights Act, 25 U.S.C. § 1302(8) extends to the type of injury alleged by the plaintiffs. This determination is not inconsistent with the Eighth Circuit Court of Appeals opinion in Luxon v. Rosebud Sioux Tribe of S. D., 455 F.2d 698 (1972), since the Court there stated:

> "In our opinion, 28 U.S.C. § 1343(4) gives the district court jurisdiction to determine in a *proper case*, whether an Indian tribe has denied one of its members any of the rights given to the members under the Indian Bill of Rights. See, Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85, 89 (D.Mont. 1969); Dodge v. Nakai, 298 F.Supp. 17, 25 (D.Ariz.1968)." (Emphasis added.)

The Eighth Circuit Court of Appeals, subsequent to its decision in Luxon v. Rosebud Sioux Tribe of S. D., has not defined the term *"proper case"* in regard to when a District Court should assume jurisdiction under the Indian Civil Rights Act. The Eighth Circuit, in various decisions, however, has determined that certain practices of an Indian tribe fall within the scope of the equal protection clause of the Indian Civil Rights Act. In the case of White Eagle v. One Feather, 478 F.2d 1311 (1973), the Court of Appeals held that the one-man, one-vote doctrine of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, applied to tribal elections. In determining whether this doctrine was within the scope and meaning of the equal protection clause of the Indian Civil Rights Act, 25 U.S.C. § 1302(8), the Court gave

due regard to the cultural and ethnical background of the Indian tribes. 478 F.2d at 1312.

■ Such a determination is necessary in determining the scope of the equal protection clause of the Indian Civil Rights Act, since the legislative history of the Act indicates that the Anglo-Saxon definition of equal protection is not to be embraced in its entirety by the Indian Civil Rights Act. The Court of Appeals in the *White Eagle* case found that the tribe had adopted voting procedures which precisely parallel those commonly found in our culture, and in concluding that the District Court had jurisdiction stated:

"Here, then, we have no problem of forcing an alien culture, with strange procedures, on this tribe. What the plaintiffs seek is merely a fair compliance with the tribe's own voting procedures in accordance with the principles of Baker v. Carr, *supra,* and subsequent cases. The language of the equal protection clause in the Act is clear, its meaning (in this context) is clear, its employment subsequent to the decision in Baker v. Carr, *supra,* has its own significance, and we can find nothing (and have been cited to nothing) in the legislative history of the Act, or, indeed, the tribal customs and culture manifesting the inapplicability of the principle." 478 F.2d 1314.

The question for the Court to consider in the present case is whether Article II of the Oglala Sioux Tribal Constitution, which delineates the tribe's enrollment standards, is subject to the Anglo-Saxon definition of equal protection. If it is found that Section 1302(8) contemplates the use of the equal protection requirements of the Fourteenth Amendment to the situation at hand, it is quite clear that the cause of action is within the jurisdiction of this Court.

In Daly v. United States, 483 F.2d 700 (1973), the Eighth Circuit Court of Appeals found that the blood quantum requirement for tribal elections of the Crow Creek Sioux Tribe, if applied uniformly, is not in conflict with the Indian Civil Rights Act guarantee of equal protection of laws. The Court stated that:

"This is one of those 'respects [in which] the equal protection requirement of the Fourteenth Amendment should not be embraced in the Indian Bill of Rights'." 483 F.2d 705 citing Groundhog v. Keeler, 442 F.2d 674, 682 (10th Cir. 1971).

Thus, the Court of Appeals was convinced that the tribe has sufficient cultural and ethnic interest in setting a higher blood quantum requirement to hold office. Once the requirements are established, however, they must be applied uniformly to avoid violating 25 U.S.C. § 1302(8). 483 F.2d at 706.

■ The parallel between the blood quantum requirement discussed in the *Daly* case, and the requirements for tribal membership found in Article II of the Oglala Sioux Tribal Constitution require this Court to find that the membership provisions of the Oglala Sioux Tribal Constitution are one of those "respects [in which] the equal protection requirement of the Fourteenth Amendment should not be embraced in the Indian Bill of Rights." Groundhog v. Keeler, 442 F.2d at 682. Neither of the plaintiffs in their complaint allege that the requirements of Article II of the Tribal Constitution or Ordinance 64–43 have been applied other than uniformly to them or persons similarly situated, nor is there any allegation in the complaint that petition was made to the Tribal Council, for their membership, which was arbitrarily or capriciously denied. In fact, although both plaintiffs claim that they have met the requirements of either Article II of the Tribal Constitution or Tribal Resolution 64–43, the complaint is devoid of any allegation that either plaintiff sought to have the Tribal Council pass on their membership. The Tribal Council is the constitutionally proper body for determining membership qualifications. *See,* Oglala Sioux Tribal Constitution, Article II, Section 2.

The case of Laramie v. Nicholson, 487 F.2d 315 (9th Cir. 1973), contains nothing at variance with the finding of this Court that the equal protection clause of the Indian Civil Rights Act does not apply to the facts as alleged in this complaint. In the *Laramie* case, the Court found a denial of equal protection of tribal laws, where the plaintiffs alleged that the Tribal Council was applying the law discriminatorily. In the present case however, there is no allegation in the plaintiffs' complaint as to a discriminatory classification.

For the reasons given above this Court finds that it does not have subject matter jurisdiction of this action, and the defendants' motion to dismiss will be granted. The prevailing party's counsel will prepare the necessary order granting the motion to dismiss for lack of jurisdiction.